Good morning again. May it please the Court, my name is Peter Ashman. I am here representing Mr. Doncho Lazarov in an appeal from a decision denying his applications for asylum and withholding of removal to Bulgaria. Simply put, Your Honors, there is a regulatory scheme found in 8 CFR Section 208 that talks about what happens when someone is able to show that they have been the victims of past persecution. And that scheme says that when someone finds, when there is a finding of past persecution, then there is a rebuttable presumption that in yours to this alien, that can be rebutted upon a finding of changed circumstances. In the alternative, there is another method, which is a humanitarian grant of asylum based upon the severity of the past persecution, that even though the circumstances may have changed, the person still is eligible for asylum based upon the conduct that was visited upon them. Now in this case, we have an alien who testified of several things that happened to him under a communist regime in Bulgaria. And even after that communist regime was changed to a purportedly democratic regime, the standard that we have before the Court is a standard of substantial evidence. And we believe that the record does contain substantial evidence that would compel a Court, and this Court in particular, to find that there had been past persecution on the part of Mr. Lazarov. As a small child, he was separated from his family and placed into a re-education camp. He was mistreated and beaten repeatedly while he was serving in the military of Bulgaria. He was beaten and arrested after the communist overthrow of Bulgaria, after the communist had been overthrown. And in addition to that, his family was separated from him. His father was placed for three years in imprisonment and served hard labor, which alone is enough to sustain a grant of political asylum. The family members had been subjected to extreme hard – to mistreatment. Now the problem that we have here is that when the judge, the immigration judge, made her memorandum of oral decision, there was no – first of all, no credibility finding on the part of the alien. In other words, the judge never affirmatively found that he was credible, nor did she find that he was not credible. And under this Court's holding in Hartoon v. INS at 21 Fed 3339, as a 1994 case from this circuit, an absence of that such a finding is entitled to a conclusion that the alien was credible. So if we accept that notion, that Mr. Lazaroff testified credibility – credibly to the mistreatment that he suffered, then I think we must be – we must find that he was a subject of past persecution. Yeah. So if we get that far with you, though, the problem then becomes changed circumstances. And as far as I can tell, what he's worried about is that he'll go back to Bulgaria now with a fair amount of money, and that criminal gangs will get him or get his family members because he has money. Well, I would – Now that's what he says. Yeah. It would be fair to concede that criminal activity in Bulgaria is not a basis for political asylum. I would concede that point. But I don't even think we get that far yet. Oh, okay. Because there never was a finding by this immigration judge of changed circumstances. There's the allegations contained in the briefs by the – or the arguments contained in the briefs by the government that there were changed circumstances. And the judge does make reference to the fact that the communist government of Bulgaria was overthrown. But we also have facts in the record that show that he was subject to persecution after the government was overthrown. So there's really never any clarity as to what changed circumstances we're talking about here. Does that mean we need a remand for a finding on changed circumstances? I think at worst we need a remand. But I think that the facts that we have put in – that he has put into the record are sufficient to sustain a grant of asylum. What's Ventura tell us? Well, you sort of caught me there. Are you familiar with Ventura? I'm not. You're on our – We got our heads handed to us, if I can state it colloquially, by the United States Supreme Court quite recently for deciding asylum cases without remanding on issues not reached by the – by the IJ or the BIA. I know what you're saying there. Okay. Well – So I think that if we go along with you that far, we're not in a position to say that he's now eligible for discretionary grant of asylum. I think at best it would be a remand for a finding of changed circumstances. Well, perhaps Your Honor is correct. I think, though, that it is clear that the judge never found changed circumstances. And at the same time, really, the decision is deficient in that respect, but in other respects, too. What happened to him from time to time when he returned to his home country? Well, I think he was able to return to his home country and return back to the United States. But not to untoward circumstances. No, sir. That's correct. But he also stated that he did this surreptitiously and was concerned the whole time while he was here. Didn't stay at his house, stayed at some remote place so that people wouldn't know that he was there. But when he says he didn't want them to know, who didn't he want to know? I mean, this is not – I'm just talking about his own testimony. I mean, who was he trying to keep this sort of quiet from? Well, I think his testimony was that there were still elements of the former regime in power in Bulgaria. I think that's a component of his case, that even though the Communist government – Went through the authorities on reentry, didn't he? At the airport or however he went into the country? Well, he would have been inspected and admitted at the airport, correct. As a national? Yes, sir. But to assume – On a Bulgarian passport? Yes, sir. But to assume that they have the level of sophistication that we do, where we're able to immediately go to a computer bank and find out, you know, who's coming in and who's coming out. Until very recently, we didn't even have that capability in this country. Maybe we still don't. I have three minutes remaining. If there's no further questions, may I – Sure. Why don't you say what we'll have from the government and then you've got some time. Thank you. Thank you. May it please the Court, my name is Cindy Ferrier and I'll be representing the Attorney General, John Ashcroft, in this matter. The standard of review for this Court, as I'm sure you're aware, is that the evidence – whether the evidence in this case compels the conclusion that any reasonable fact finder must find the requisite fear of persecution.  The evidence does not compel such a finding. Petitioner bases his claim for asylum on events which happened long past and under a different political regime than is in Bulgaria now. At least two reasons strongly support the immigration judge's conclusion that the petitioner is not met as burden of proof. The first is that he returned to Bulgaria on three separate occasions. He returned there in 1994, 1995, and 1996. And he was there each time for a substantial period of time. 26 days the first time, 60 days the second time, and 45 days the third time. So it seems as though the government would be aware upon his reentry into the country that he has, in fact, reentered. And if not – Let me interrupt you for a moment. Sure. You said the petitioner did not meet his burden of proof. As to which issue? His burden of proof as to – as to the fact that he actually had a well-founded fear of future persecution. Let's assume that he did meet his burden as to past persecution. Doesn't the burden of going forward shift to the government to demonstrate that he does not have a well-founded fear because of changes in circumstances? Yes. And I think in this case the government satisfied any such requirement by the presentation or through the country condition report. Did the immigration judge make such a finding? The immigration judge did not explicitly state that. However, I think you can get to that conclusion because implicitly the immigration judge said that she found that the union of democratic forces whom the petitioner's father had supported was now a governing power there. And that information came from the government's evidence? That is contained in the country conditions report. As well as – well, and then separately and apart from that, the fact that he returned three different times without difficulty. I think that you can find that the immigration judge did find that there was changed circumstances. Now – You mean implicitly? Yes. I'm sorry. Implicitly find that. Yes. I think that – Implicitly that there was proof by the government to me that he – Yes. Burden of persuasion. So the suggestion that the case be remanded for the immigration judge to explicitly make such a finding I think is an unnecessary step that the court would take because to make such a finding the immigration judge would, as you said, the burden would shift to the INS or to the government. Usually the government then does submit the country conditions reports. In this case, the country condition reports do speak quite specifically to the situations or the fear of persecution that petitioner raised. That would be the fear of reprisal from old communist members that might still be out there. And the country report says the political conditions have so altered in the past eight years to remove any presumption that past mistreatment under the communists will lead to further difficulties. And the second fear that he seemed to reference was his participation in demonstrations with the Echo Glass Mosque Association.  And that persons that suggest that they would suffer persecution or had suffered persecution in 1989 demonstrations, such as the petitioner, have not been – suffered any retribution against them. So I think that any finding that you would want the immigration judge to make has actually been made. And these were brought up during the proceeding so petitioner was aware of them and could present his evidence in rebuttal if necessary. And you can see at pages 97 through 98 and 107 through 109 in the closing statements that petitioner and petitioner's counsel in fact did reference the country condition reports, were aware of them, and had the opportunity to deal with any questions that were raised there. So I think that, as I said, that his three – that the two – there are the two reasons that do provide substantial evidence that support the immigration judge's finding. The one is his three return trips to Bulgaria. The second is the current country conditions have changed to such an extent to support the immigration judge's finding. So in this case, the evidence does not compel that the immigration judge's decision is incorrect. Therefore, remand is not necessary in this case. So if you have any questions. But we deny the petition based solely upon the immigration judge's conclusion that there was no problem when he returned and, therefore, that demonstrated no objective well-founded fear of future persecution. I would argue that you could do that. I think that the immigration judge, as we argued in our brief, we felt that the petitioner hadn't necessarily made out his case for past persecution. Well, let's assume I disagree with you. Right. And acknowledge that the I.J. didn't expressly make a finding with that. I will acknowledge that. So I think then the proper analysis would probably be that, in fact, if he found that there was past persecution, then the I.J. found that that was rebutted by the changed circumstances and that necessarily reflects the finding. Well, my question is different. Let's assume that there's no reference to change of circumstances based on the report and no finding that that was sufficient. Yes. All we have is that he returned without any problem and that the I.J. relied on that to demonstrate no well-founded fear objectively. Yes. Is that enough? I think it is, because the I.J. not only relied upon that, but did rely upon the fact or she did rely upon the fact that there are changed conditions in that country by her mentioning the fact that there's now a new political regime. You have to rely on both the return visits and the conduct courted plus the country report? I don't think it's. Does Judge Alarcon write that you can rely solely on the home visits? I think that you can rely solely on the visits. I mean, there's enough. It's simply the country conditions reports bolster his decision, provide more substantial evidence. But I do think that that is evidence in and of itself enough, the fact that he was able to return for those three times for such long periods of time, that he does not have a well-founded fear. Now, was that evidence presented by the government or by the petitioner? I am not sure exactly. Actually, I think it was written in his asylum application, so it would have been first admitted by him. So he admitted that himself. Thank you. Thank you very much. Mr. Ashman, do you have any rebuttal? Thank you. Just a couple of points to touch on real quickly. The regulations, when it talks about this statute, this regulatory scheme of past persecution creating the rebuttable presumption, requires that there be a finding by the preponderance of evidence. And the words are expressly, if any of the following is found by a preponderance of the evidence. Now, I don't think that there was anything found. If a remand were required, it would be solely for the purpose of a factual finding with respect to continuing persecution, right? I think so, but I think it could be phrased as whether or not there's changed country conditions. But it leads into what Your Honor suggested. Well, that's the evidence that supports it or doesn't support it, as the case may be. But the factual finding would be made by the IJ based on the evidence. And I assume that we would directly could take further evidence limited solely to the one issue. Is that what you're really asking for? Well, actually, you'd like to start from scratch all over again. I know. Make an original. Well, I would like a reversal. I'd like a million dollars. I think, you know, in reference to the returning to Bulgaria, I just want to briefly comment. The record is clear why he returned. These were not pleasure visits. This wasn't to go, you know, to some festival. This was because he had family members that were dying. He had a wife and a child that were still remaining in Bulgaria. He visited with them, too. Pardon me? He visited with the children. Yes, I believe so. And hiding out, particularly. Well, if he went through, if he reentered through standard process and resided there for a period of time. Well, he claims he was hiding out. Okay. And there was no finding to the. He claims he's keeping his head down. That's right. So if there's no further questions. Okay. Thank both sides for this argument. Thank you, Mr. Ashman, for coming down for two arguments. The case of Lazaroff v. Ashcroft is now submitted for discussion.
judges: Beezer, Alarcon,w. Fletcher